CONNELLY *v*. THOMAS.
THOMAS *v*. CONNELLY.

5-2638; 5-2642                                   356 S. W. 2d 430

Opinion delivered April 16, 1962.

[Rehearing denied May 14, 1962.]

5-2638. *J. Hugh Wharton,* for appellants; *B. W. Thomas* and *Richard W. Hobbs,* for appellees.

5-2642. *B. W. Thomas* and *Richard W. Hobbs,* for appellants; *J. Hugh Wharton,* for appellees.

ED. F. MCFADDIN, Associate Justice. These two cases stem from the criminal cases of the *State of Arkansas* v. *Bonnie Connelly,* which have been twice before the Court. *Connelly* v. *State,* 232 Ark. 826, 335 S. W. 2d 723; *Connelly* v. *State,* 234 Ark. 143, 350 S. W. 2d 298. In the first case we reversed the second degree murder conviction of Mrs. Connelly; and in the second case we affirmed Mrs. Connelly's conviction for manslaughter. When Mrs. Connelly was originally charged with the murder of her husband she employed Messrs. Thomas and Hobbs to represent her; but she became dissatisfied when they insited on sending her to the State Hospital for mental examination, so she discharged them. The said attorneys filed action in the Garland Circuit Court and obtained a verdict and judgment on December 2, 1959 against Mrs. Connelly for $3,559.90 as a reasonable attorneys' fee; and, by execution, obtained $1,325.50 credit on the judgment.

Then Messrs. Thomas and Hobbs filed this suit, No. 33241 in the Garland Chancery Court, (a) to recover additional fees claimed to be due; (b) to cancel as a fraudulent conveyance an assignment executed by Mrs. Connelly to her mother, Mrs. Alice Nichols, for $11,000.00 of the proceeds of a life insurance policy;[1] and (c) to subject the proceeds of the life insurance funds to the satisfaction of the plaintiffs' judgment. The New York Life Insurance Company was made a defendant as equitable garnishee in order to impound the proceeds of the said life insurance policy. The Insurance Company paid $19,971.30 as the proceeds of the policy into the Registry of the Court, was discharged with its costs (§ 27-816 Ark. Stats.), and had no further part in this litigation.

The defendants, Mrs. Connelly, her daughter, and her mother (*altogether referred to as "Mrs. Connelly et al."*), resisted the complaint, and trial in the Chancery Court resulted in a decree from which both sides have appealed. Mrs. Connelly *et al.* were dissatisfied because (a) Thomas and Hobbs received any judgment, (b) the assignment to Alice Nichols was not recognized as valid, and (c) the Court held certain assets to await the outcome of this appeal; so they filed their appeal as Case No. 2638 in this Court. Messrs. Thomas and Hobbs were dissatisfied because the amount of the Chancery judgment which they received was not as large as they claimed; so they filed their appeal as Case No. 2642 in this Court. These two pending cases are consolidated because both are from the same decree of the Garland Chancery Court.[2]

I. *The Claim Of Messrs. Thomas And Hobbs.* Messrs. Thomas and Hobbs claimed that in addition to representing Mrs. Connelly in the criminal proceedings,

---

[1] Mr. Joseph E. Connelly, the husband of Mrs. Connelly, had an insurance policy with New York Life Insurance Company, and his wife was named therein as the first beneficiary. No question is raised on this appeal as to Mrs. Connelly's right to receive the proceeds of the insurance policy on her husband's life; but in this connection attention is called to the cases of *Smith* v. *Dean*, 226 Ark. 438, 290 S.W. 2d 439; and *Horn* v. *Cole*, 203 Ark. 361, 156 S.W. 2d 787.

[2] Section 27-2127.10 Ark. Stats., which is § 18 of Act No. 555 of 1953, is authority for such consolidation.

they had also, at her request and at the request of her daughter, obtained court orders declaring the said Bonnie J. N. Connelly of full age; had resisted guardianship proceedings against Bonnie J. N. Connelly in the Garland Chancery Court; and had also spent considerable time, energy, and effort as attorneys for Mrs. Connelly in briefing the question as to whether she could recover the proceeds of the insurance policy here involved. For all of these services, the attorneys claimed that they should receive a fee of at least $1,500.00, in addition to the Circuit Court judgment which they had already obtained from Mrs. Connelly.

After hearing all of the evidence, the Chancery Court awarded Messrs. Thomas and Hobbs a fee of $200.00 for their services, in addition to the Circuit Court judgment. From the evidence before us, we are unable to say that the Chancery Court was in error in fixing this amount. The Circuit Court judgment in favor of Messrs. Thomas and Hobbs and against Mrs. Connelly was rendered on December 2, 1959 for $3,559.90. The Chancery Court in the case at bar may well have concluded that Messrs. Thomas and Hobbs included in the Circuit Court case their entire account for all services rendered to Mrs. Connelly to the date of the said Circuit Court judgment; and most of the services testified to by Messrs. Thomas and Hobbs, as rendered to Mrs. Connelly in addition to the representation in the criminal case, were services that were rendered before the date of the said judgment. Having the minor declared of age was on July 8, 1959. Resisting the effort of other relatives to have the minor placed under guardianship was on July 21, 1959. In fact, we find very few services to have been rendered by Messrs. Thomas and Hobbs to Mrs. Connelly or Bonnie J. N. Connelly after the date of the Circuit Court judgment of December 2, 1959. Therefore, as to the $200.00 awarded Messrs. Thomas and Hobbs, we are unable to say that the Chancery Court was in error in any respect, either on the appeal of Mrs. Connelly, *et al.*, or on the appeal of Messrs. Thomas and Hobbs.

II. *The Assignment Of The Insurance Proceeds.*
Mrs. Connelly *et al.* complain because the Chancery
Court cancelled as fraudulent an assignment which Mrs.
Connelly had made to her mother, Mrs. Alice Nichols.
Messrs. Thomas and Hobbs filed their Circuit Court
action against Mrs. Connelly on August 17, 1959. Hav-
ing employed other attorneys, Mrs. Connelly, on Sep-
tember 12, 1959, executed assignments to them totaling
in excess of $9,000.00 against the proceeds of the insur-
ance policy. Then on November 2, 1959, Mrs. Connelly
executed to her mother, Mrs. Alice Nichols, as Trustee,
an assignment for $11,000.00 of the proceeds of the in-
surance policy. It is this $11,000.00 assignment that the
Chancery Court set aside. It was clearly a fraudulent
conveyance, and the Chancery Court was correct in can-
celling it.

Mrs. Connelly testified that she had no money at
the time; that her brothers and sisters loaned her money;
and that the assignment to Mrs. Nichols, Trustee, was to
repay such advances. Yet, the fact remains that no
brother or sister came forward to testify as having made
any advances to Mrs. Connelly. Only the mother, Mrs.
Alice Nichols, testified, and her testimony was indefinite
and uncertain. We thus have a debtor (Mrs. Connelly)
in financially desperate circumstances equal to insolv-
ency, making a conveyance (the assignment) to her near
relative of all of her tangible assets and with no proved
consideration therefor. In *Kaufman* v. *Citizens' Bank,*
189 Ark. 113, 70 S. W. 2d 572, we said:

''The rule of law, in reference to conveyances under
the facts and circumstances here presented is well set-
tled in this State, and is to the following effect: 'Con-
veyances made to members of one's household and to
near relatives of an embarrassed debtor are looked upon
with suspicion and scrutinized with care; when voluntary
they are presumed fraudulent, and when the embarrass-
ment of the debtor proceeds to financial wreck such con-
veyances are conclusively presumed to be fraudulent as
to existing creditors.' *Wilkes* v. *Vaughan,* 73 Ark. 174,

83 S. W. 913; *Papan* v. *Nahay,* 106 Ark. 230, 152 S. W. 107; *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124; *Fluke* v. *Sharom,* 118 Ark. 229, 176 S. W. 684.''

III. *Holding Assets For Future Distribution.* Mrs. Connelly *et al.* complain that the Chancery Court had no authority to retain $1,500.00 of the insurance money in the Registry of the Court to await the outcome of this litigation. From the $19,971.30 paid into the Garland Chancery Court by the New York Life Insurance Company, the decree here challenged made the following disbursements:

| | | |
|---|---|---:|
| (a) | To Mr. Holt for attorney's fees | $ 4,459.14 |
| (b) | To Mr. Lookadoo for attorney's fees | 5,309.14 |
| (c) | To Mr. House for filing the interpleader for the Insurance Company | 300.00 |
| (d) | To Mr. Francis to satisfy a judgment he held against Mrs. Connelly | 1,187.38 |
| (e) | To Messrs. Thomas and Hobbs to satisfy their Circuit Court judgment against Mrs. Connelly | 2,672.41 |
| (f) | To Messrs. Thomas and Hobbs for the Probate and Chancery fee allowed in this case | 200.00 |
| | Total Paid Out | $14,128.07 |
| (g) | Retained in Registry of Court | 1,500.00 |
| (h) | Paid to Mrs. Bonnie Connelly at the time of the decree | 4,343.23 |
| | Total to Equal Amount Deposited | $19,971.30 |

The disbursements, (a) to Mr. Holt, and (b) to Mr. Lookadoo, were for services rendered to Mrs. Connelly

in her criminal cases, and she raises no question about these disbursements. Neither is any question raised on this appeal as to the correctness of the disbursements (c), (d), and (e) above. We have already considered and settled the question as to the correctness of the disbursement (f) which was to Messrs. Thomas and Hobbs for their services in the Probate and Chancery Court. The appellants, Mrs. Bonnie Connelly *et al.,* complain on this appeal that the Chancery Court should not have retained in its Registry the $1,500.00 in item (g), but should have delivered said amount to Mrs. Connelly, along with the $4,343.23 in item (h).

We fail to see wherein Mrs. Bonnie Connelly *et al.* have any merit in such contention. The money in the Registry of the Court had been interpleaded by the New York Life Insurance Company and the burden was on each claimant to establish such claimant's right to any part of the interpleaded money. Each person seeking any part of the money had the position of a plaintiff toward such money. In *Consolidated Underwriters* v. *Bradshaw,* 136 F. Supp. 395, Judge John E. Miller said:

". . . an interpleader action normally proceeds in two phases. The first phase is the granting of the interpleader and the dishcarging of the plaintiff from further liability upon payment of the particular fund into the registry of the court. The second phase of an interpleader action is the determination of the claimants' rights to the fund. In regard to the second phase, each claimant occupies the position of a plaintiff and must establish his claim by a preponderance of the evidence. See *Phoenix Mut. Life Ins. Co. of Hartford, Conn.* v. *Reich,* D. C. Pa., 75 F. Supp. 886."

Mrs. Bonnie Connelly, for herself, did not establish a claim to any of the money. Rather, she claimed that she had assigned the money to Mrs. Alice Nichols. So certainly Mrs. Connelly is in no position to complain. Mrs. Alice Nichols' assignment was held to be fraudulent and void; so she would not be entitled to the $1,500.00 unless her assignment is held to be valid; and it was

not valid. What the Chancery Court did was to leave the $1,500.00 in the Registry of the Court to await the result of this appeal. Since no party sought to supersede such decree, no one could receive the fund until the further orders of the Court; and we find no abuse of discretion by the Trial Court.

The decree of the Chancery Court is affirmed in all respects, and the costs of this appeal are to be paid from the impounded fund.