Howard S. LESSMAN and Clara LESSMAN
*v.* Ray DAWSON, et al.

CA 84-386                                687 S.W.2d 860

Court of Appeals of Arkansas
Division II
Opinion delivered April 17, 1985

*Boyce & Boyce,* by: *Wayne Boyce,* for appellants.

*Daggett, Van Dover, Donovan & Cahoon,* by: *Jimason J. Daggett,* for appellee.

MELVIN MAYFIELD, Judge. The appellees, Ray Dawson and members of his family, are residents of Arkansas who owned a farm in the State of Mississippi. In March of 1982, the appellees sold the farm to a group of investors from Illinois which included Howard Lessman, one of the appellants. Mr. Dawson agreed to take a promissory note from the Illinois group for $600,000 as part of the purchase price, but only after reviewing Mr. Lessman's individual financial statement that assessed his total assets at more than $1,500,000 and which included a 700-acre rice farm located in Independence County, Arkansas. The promissory note called for interest to be paid on March 1, 1983, and for interest and unpaid principal to be paid on March 10, 1984.

The Illinois group executed two other promissory notes in connection with the transaction; one in the amount of $3,150,000, to the Germantown Trust Savings and Loan Association in Memphis, Tennessee, and the other in the amount of $426,090, to a trustee employed by the two real estate agents who negotiated the sale of the farm. At the time of the sale, the Illinois group anticipated reselling the Mississippi farm in the very near future and making a substantial profit. Unfortunately various problems ensued, the property did not resell, and the group defaulted on all three of its promissory notes.

In November of 1983, the appellees obtained a judgment against Mr. Lessman in the Phillips County Circuit Court on the unpaid $600,000 note and they then attempted to levy execution on the rice farm in Independence County. They discovered, however, that in May of 1982, Mr. Lessman had conveyed a substantial amount of his property, including the farm, to his wife, who is the other appellant in this case. The appellees were thus unable to collect on their

judgment and filed suit in the Independence County Chancery Court to have the conveyance of the farm property from Mr. Lessman to his wife set aside as fraudulent and void.

The chancellor found that the conveyance of the farm, which was accomplished by a deed dated May 10, 1982, but not recorded until September 20, 1982, was indeed fraudulent and void and he ordered it set aside as against the claims of the appellees. The appellants make two arguments on appeal. First, they argue that the chancellor erred in finding that the conveyance was fraudulent as there was no showing that Mr. Lessman was insolvent at the time of the conveyance. Second, they argue fraud is never presumed and that the evidence is not sufficient to establish intent to defraud.

The appellants recognize that Ark. Stat. Ann. § 68-1302 (Repl. 1979) provides that the conveyance of property with the intent to delay, hinder, or defraud creditors shall be void. They also cite 37 Am. Jur. 2d *Fraudulent Conveyances* § 5 (1968) for the general statement that a debtor's assets constitute a fund out of which his creditors have a right to be paid, but that an individual should be permitted to exercise extended discretion as to the time and manner of disposing of his property, provided he does so fairly and honestly in reference to the equitable rights of his creditors. And from 37 Am. Jur. 2d, *supra,* § 15, appellants quote the following:

> Insolvency is to be determined as of the time of the conveyance, which, even though without fair consideration is not fraudulent because of the debtor's insolvency if the conveyance itself does not render the debtor insolvent and *he does not become insolvent until some time afterward.* (Emphasis added.)

The Arkansas cases of *Wasson v. Patton,* 190 Ark. 397, 79 S.W.2d 276 (1935), *Mente & Co., Inc. v. Westbrook,* 181 Ark. 96, 24 S.W.2d 976 (1930), and *Fisher v. Knight,* 211 Ark. 465, 200 S.W.2d 799 (1947), are cited by appellants for the proposition that a conveyance will not be set aside as fraudulent as to creditors if the debtor is not insolvent at the time of the conveyance.

On the other hand, the appellees contend that it is not required that the grantor be insolvent at the time of the conveyance in order for the conveyance to constitute a fraud on creditors. They point out that Ark. Stat. Ann. § 68-1302, *supra,* does not even use the word "insolvent" and that it speaks of conveyances made with the "intent to hinder, delay, or defraud creditors." Appellees also cite *United States* v. *Johnston,* 245 F. Supp. 433 (W.D. Ark. 1965), where the court stated:

> In a suit to set aside a conveyance as fraudulent, it is not indispensable for the plaintiff to prove that the transferor was insolvent at the time of the transfer or that he was made so by the transfer. If prejudice to creditors results, a transfer made with intent to hinder, delay or defraud them will be set aside even though the transferor was solvent at the time of the transfer and remained so thereafter. . . .

Appellees argue that the date to use in determining the intent of the transferors is the date the conveyance is filed for record and not the date of its execution. For support, they cite *Chronister* v. *Jernigan,* 196 Ark. 615, 119 S.W.2d 538 (1938) and *Kaufman* v. *Citizens' Bank,* 189 Ark. 113, 70 S.W.2d 572 (1934).

We think the questions of whether the debtor must be insolvent, and whether the date to use in determining intent is when the conveyance is executed or when it is filed for record, are not ultimate questions but are simply matters for consideration in making the determination of whether the conveyance was made with intent to delay, hinder, or defraud creditors.

In this case there is evidence that on the date the Independence County farm was conveyed by Mr. Lessman to his wife, he had obligations totaling more than $4,000,000. As of the date the deed to his wife was executed, Lessman owed, for accrued interest only, more than $126,000, and by the time the deed was filed for record, the accrued interest obligation amounted to over $380,000. The evidence shows that buyers for the Mississippi land did not materialize, that

appellants had trouble renting the land, and that they had trouble farming it. Within six weeks after he executed the $600,000 note to appellees, Lessman had made property transfers to his wife which made it impossible for him to pay the appellees' note. He admitted this at the trial of this matter. He also admitted that he had judgments against him in excess of $2,000,000, taken after he transferred assets worth more than $1,000,000 to his wife for no consideration save love and affection, and she is not liable for any of his debts.

In *Dereuisseaux* v. *Bell,* 238 Ark. 60, 378 S.W.2d 208 (1964), Sam Bell had shot a man in 1961. At that time he owned property worth about $25,000. During the first half of 1962, Bell gave all his property to his niece, Leila Dereuisseaux. In May of 1962, the man who was shot sued Sam Bell for $120,000. In a suit to set aside the conveyances to the niece, the chancellor entered a decree granting the relief sought. The Supreme Court said:

> It was stipulated at the beginning of the trial that "Sam Bell gave all of his property, both real and personal, except the truck, to Leila Dereuisseaux." Mrs. Dereuisseaux and others gave testimony indicating that Bell was motivated not by any desire to defraud William Robert Bell but by the wish to provide for this niece, for whom he had great affection. It is argued that in view of this proof the appellee failed to prove such actual fraud as would justify the chancellor in setting aside the gifts.

> This argument is unsound, for there is no requirement that conscious fraud be shown. We have repeatedly held that conveyances by an embarrassed debtor to his near relatives are presumably fraudulent, and when the debtor's condition proceeds, as here, to the point of insolvency, such conveyances are, with respect to existing creditors, *conclusively* presumed to be fraudulent. *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S.W. 913; *Kaufman* v. *Citizens Bank,* 189 Ark. 113, 70 S.W.2d 572; *Connelly* v. *Thomas,* 234 Ark. 1024, 356 S.W.2d 430. Since the presumption of fraud is conclusive it cannot be rebutted by proof that there was actually no

intentional wrongdoing. . . . (Emphasis in original.)

The appellees cite other cases to the same effect. In one, *Tunstill* v. *J. T. Fargason Co.,* 156 Ark. 513, 246 S.W. 856 (1923), the court said:

> It occurs to us that this testimony was sufficient to warrant the trial court in finding that Tunstill was insolvent. That is to say, after conveying the property described in the deed, he was wholly unable to pay the debt due the appellee. The deed was executed upon the nominal consideration of $1. At the time the conveyance was made, Tunstill was indebted to the appellee in a sum which the latter claimed to be over $1,500, which sum Tunstill has not challenged by his evidence and does not dispute in his brief, his only contention as to this being that he was not insolvent. The court was warranted in finding that Tunstill was in debt in a large amount to the appellee, and that this conveyance would render him utterly unable to pay this debt. There was ample testimony to justify the court in finding that the conveyance from Tunstill to his wife was a voluntary conveyance and made to defraud creditors.

We see no need to discuss actual intent to defraud since the evidence in this case, considered in light of the law set out in *Dereuisseaux* and *Tunstill,* clearly supports the chancellor's decision. *See also Keck* v. *Gentry,* 238 Ark. 672, 384 S.W.2d 242 (1964); *Collatt* v. *Bowen,* 181 Ark. 268, 25 S.W.2d 770 (1930); *Papan* v. *Nahay,* 106 Ark. 230, 152 S.W. 107 (1913); and *Allis* v. *Jones,* 403 F.2d 707 (8th Cir. 1968).

Affirmed.

CRACRAFT, C.J., and CORBIN, J., agree.